## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOI
## EASTERN DIVISION

LANCE EARLS, )
)
        Plaintiff, )
)
vs. )
)    Case No. 14 cv 03034
COOK COUNTY; COOK COUNTY )     Hon. Thomas M. Durkin
SHERIFF, THOMAS DART; )
SUPERINTENDENT MARTINEZ; )
OFFICER BICKCOM; OFFICER BALUK; )
OFFICER MIRANDA; and OFFICER )
VASQUEZ; )
)
        Defendants. )

## FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff, LANCE EARLS (the "Plaintiff"), by and through his attorneys, BORIS G. SAMOVALOV and ZANE D. SMITH of ZANE D. SMITH & ASSOCIATES, LTD., and complaining of Defendants, COOK COUNTY; COOK COUNTY SHERIFF, THOMAS DART; SUPERINTENDENT MARTINEZ; OFFICER BICKCOM; OFFICER BALUK; OFFICER MIRANDA; and OFFICER VASQUEZ; and as and for his Complaint, states as follows:

## JURISDICTION AND VENUE

1.    This action is brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983, to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3.     Venue is proper under 28 U.S.C. §1391(b) as the events giving rise to the claims asserted in this complaint occurred in the Northern District of Illinois.

## PARTIES

4.     Plaintiff is and was at all relevant times an inmate within the Cook County Department of Corrections, 2950 S. California Ave., Chicago, IL 60608.

5.     Defendant, THOMAS DART, is and was at all relevant times the duly appointed and sworn Sheriff of the County of Cook State of Illinois.  Dart is being sued in his official capacity.

6.     Defendant, SUPERINTENDENT MARTINEZ ("Martinez"), at all relevant times was the Superintendent of the First Division within the Cook County Department of Corrections, 2950 S. California Ave., Chicago, IL 60608 (the "Department" or the "Jail").  Martinez is being sued in his official capacity.

7.     Defendant, OFFICER BICKCOM ("Bickom"), at all relevant times was a correctional officer in the First Division within the Cook County Department of Corrections, 2950 S. California Ave., Chicago, Illinois 60608.  Dart is being sued in his individual capacity and in his official capacity.

8.     Defendant, OFFICER BALUK ("Baluk"), at all relevant times was a correctional officer in the First Division within the Cook County Department of Corrections, 2950 S. California Ave., Chicago, Illinois 60608.  Dart is being sued in his individual capacity and in his official capacity.

9.     Defendant, OFFICER Miranda ("Miranda"), at all relevant times was a correctional officer in the First Division within the Cook County Department of Corrections,

2950 S. California Ave., Chicago, Illinois 60608. Dart is being sued in his individual capacity and in his official capacity.

10.     Defendant, OFFICER VASQUEZ ("Vasquez"), at all relevant times was a correctional officer in the First Division within the Cook County Department of Corrections, 2950 S. California Ave., Chicago, Illinois 60608. Dart is being sued in his individual capacity and in his official capacity.

11.     Defendant, COOK COUNTY ("Cook County"), is a political and administrative division of the State of Illinois, providing certain local governmental services. Cook County is being joined as operations of the Cook County Department of Corrections are the financial responsibility of Cook County.

## FACTS COMMON TO ALL COUNTS

### A.     Violence Directed at the Defendant and his Injuries

12.     On or about June 3, 2013, at 1:35 p.m., the Plaintiff was using a phone at the Department.

13.     At that time, a correction officer (the "Officer") that was working the tier where the Plaintiff was using the phone directed the plaintiff to hang up the phone and directed various profanities, racial epithets, and threats toward the Plaintiff.

14.     As a result of the foregoing conduct of the Officer, the Plaintiff and said corrections officer got into an argument.

15.     At that time and place, the Officer called for backup and several other officers responded.

3

16. Among the officers who responded, Baluk and Bickom came and aggressively threw the Plaintiff to the floor, handcuffed him, pulled him up and took him outside the tier to the stairwell, while other officers stood by and took no action to intervene.

17. Once Baluk and Bickom led the Plaintiff to the stairwell, they started slapping, punching, and kicking the Plaintiff, while he was handcuffed and offered no resistance to justify the officers' use of excessive and unnecessary force.

19. Other officers stood by and took no action to intervene.

20. Plaintiff was then dragged from the well to the post, there the beating did not stop and only escalated, as Miranda and Vasquez joined in the attack on the Plaintiff.

21. Plaintiff was then placed in leg restraints.

22. After being placed in leg restraints, Baluk picked the Plaintiff up and slammed him on the ground, while the Plaintiff was handcuffed and shackled.

23. Thereafter, Baluk, Bickcom, Miranda, and Vasquez, along with several other unidentified corrections officers resumed beating Plaintiff, hitting him all over his body, including but not limited in his face, back, and head.

24. The beating was so severe that Plaintiff lost his consciousness.

25. Upon information and belief, Cook County and the Department have policies and procedures in place that required the foregoing incident to be recorded, and despite such policies and procedures, there is no video recording of the foregoing incident.

26. After the foregoing incident, Plaintiff woke up in the healthcare unit with severe injuries.

27. Plaintiff was then transferred to a segregated level unit, Division 9 of the Department.

28.     As a result of the Plaintiff's transfer, his personal belongings were lost.  Upon information and belief, the Plaintiff's personal belongings were intentionally disposed of or converted by Baluk, Bickom, Miranda, and/or Vasquez in order to further punish and humiliate the Plaintiff.

29.     Plaintiff's personal property that was displaced and/or converted includes, but is not limited to various food items, cosmetics, personal care products, articles of clothing, books, and personal property all of which have sentimental value (photographs, letters, cards, etc.).

30.     As a result of the foregoing actions of the Defendants, Plaintiff sustained severe and permanent injuries, emotional distress, in addition to property loss.

31.     Plaintiff has complied with all available administrative remedies within the Department, in accordance with 42 U.S.C. 1997(e) and (a).

**B.      Background: Jail**

32.     Located on approximately 96 acres in Chicago, Illinois, the Jail is the largest single-site county jail in the United States.  It is divided into 11 divisions and is staffed by approximately 3,800 officers, guards, and other civilian employees.

33.     All corrections and security functions at the Jail are administered by the Cook County Department of Corrections through the Cook County Sheriff's Office.

**C.      Rampant Use of Violence and Excessive Force at the Jail**

34.     Detainees at the Jail are regularly subjected to violence, humiliation, and excessive force at the hands of the corrections officers and/or jail guards.

35.     For instance, a 2007 investigation by the Department of Justice Civil Rights Division, pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), found that: "inmates at Cook County Jail are regularly subjected to inappropriate and excessive uses of

physical force," and that "Cook County Jail officers too often respond to inmates' verbal insults or failures or failure to follow instructions by physically striking [them], most often with the assistance of other officers, even when the inmate presents no threat to anyone's safety or [to] the security of the facility." Department of Justice CRIPA Report on Cook County Jail ("DOJ CRIPA Report"), July 11, 2008, at p. 10.

36.     As one "top security administrator frankly acknowledged" to DOJ investigators, there is a deep-seated "culture of abusing inmates" at the Jail "in which the excessive and inappropriate use of physical force [against detainees and/or inmates] is too often tolerated" by administrative and supervisory officials. DOJ CRIPA Report, at p. 10.

37.     Indeed DOJ CRIPA Report is filled with examples of beatings similar to the beating suffered by the Plaintiff. *See e.g.* DOC CRIPA Report, at pp. 11-16.

38.     The following is just a small sampling of examples of officer violence directed at inmates, cited in the DOJ CRIPA Report:

a.     Detainee attacked by a number of officers after verbal altercation related to a dinner tray where emergency records show detainee suffered blunt trauma to his head and body, three teeth knocked loose, and a laceration to his lower lip (p. 11);

b.     Detainee punched and kicked by multiple RCDC officers while retrained because he was in possession of an unauthorized shirt resulting in broken jaw that required surgery at an outside hospital (p. 13);

c.     Detainee handcuffed behind his back, and has his head pushed into concrete wall, before being thrown down a flight of stairs, and punched and kicked repeatedly in the face by multiple officers as a result of insisting he be able to speak with a supervisor (p. 13);

d.      Detainee beaten by officers who called him a "fucking Mexican" and threatened to kill him if he reported the incident.  Detainee suffered broken ribs and damage to his jaw and knee as a result of the attack (p. 17); and

e.      Detainee severely beaten by officers because he asked for his methadone medication, resulting in multiple fractures and a collapsed lung.  Detainee's injuries were so severe he needed to be transferred to a Level 1 trauma center and placed on a ventilator (p. 17).

39.      This pattern of the regular use of excessive force against detainees by the Jail officers and guards is not confined to the period of time evaluated by the DOJ, but rather it continues until the present day and was in full-blown force and effect at the time the Plaintiff was beaten and severely injured.

40.      For instance, as late as 2016, a Better Government Association ("BGA") study of officer-on-detainee violence at Cook County Jail found that from 2008 through 2015, there were at least 1094 complaints of excessive force filed by detainees against the Jail correction officers and guards.  During this same period, there have also been dozens of lawsuits filed by detainees and former detainees alleging excessive force by the Jail correctional officers.

41.      Similarly, in a 2014 sworn declaration supporting class certification in *Hundson v. Preckwinkle, et al.*, a case dealing specifically with the widespread brutality of the Jail officers against detainees and/or inmates, renowned jail and prison expert Dr. Jeffrey Schwartz indicated that excessive force by the Jail officers and guards was by far the most common complaint lodged by detainees.

42.      Administrators and supervisory officials at the Jail are well aware of the longstanding and regular abuse of detainees and inmates at the Jail by officers and guards. *See e.g.*, Declaration of Dr. Jeffrey Schwartz, *Hudson v. Preckwinkle, et al.* 13-cv-8752, Dkt # 15-20,

at 8 (finding that "high-ranking officials in the management and administration of [the Jail] had to have known about" the large scale problem with excessive force at the Jail because the "CRIPA investigation by the U.S. Department of Justice that resulted in a consent decree," as well as the periodic reports by the Court Monitor since that consent decree, have forced on staff use of force; and because of the "seriousness of the incidents . . . and the frequency with which excessive force" occurs at the Jail).

**D.      History of Covering up and Condoning Officers' and Guards' Misconduct**

43.      Supervisory officials and the Jail, as well as the corrections officers and guards, including the Defendants, have a long standing history of covering up and/or condoning the use of excessive force at the Jail.

44.      As Dr. Schwartz indicated in his sworn declaration, the "systemic abuse of detainees/inmates" at the Jail, by the officers, is "***maintained by a long-standing and pervasive code of silence that few officers are willing to break.***" Declaration of Dr. Schwartz, *Hudson v. Preckwinkle, et al.* 13-cv-8752, Dkt. #15-20, at 7 (emphasis added).

45.      Examples of this code of silence at the Cook County Jail include:

a.      January 2012 incident in which Sergeant James Elwood witnessed Officer Luis Zuniga repeatedly kick a detainee in the face while he was handcuffed on the ground.  Not only did Sergeant Elwood deliberately fail to activate his body camera to record the incident, when the camera was properly activated he repeatedly placed his finger over the lens so that it would not capture Zuniga's use of excessive force.  In addition to this, Sergeant Elmwood failed to submit an incident report documenting Zuniga's excessive force, and did not report this incident to his supervisors.  Finally, Sergeant Zuniga signed a witness statement to internal affairs that falsely stated that he did not witness the attack.  At the time of this incident, Sergeant Elwood

had another pending complaint against him for the excessive use of force and for the failure to report the excessive use of force. (*see* Cook County Sheriff's Merit Board Decision, Docket #1810, February 22, 2016).

b.      January 2014 incident in which  a detainee who refused to enter a quarantined cell was beaten by a corrections officer while other officers looked on.  The attack on the detainee resulted in facial injuries.   Several officers, a sergeant, and at least one internal affairs investigator were alleged to have filed false reports that made no mention of the attack on the detainee. (*see Bolton v. Dart, et al.* 16-cv-5012).

c.      April 2006 incident in which an inmate who refused to go to the recreation room because he needed to use the bathroom was beaten and kicked by several officers.  This incident was witnessed by a sergeant who eventually joined in the beating.  The attack on the inmate resulted in severe neck injuries.  All seven officers and the Sergeant involved in the attack filed false use of force reports. (*see* DOJ CRIPA Report, at p. 13).

d.      The refusal to provide detainees/inmates with grievance forms to report the excessive use of force (*see e.g.,* Declaration of Dr. Schwartz, *Hudson v. Preckwinkle, et al.*, 13-cv-8752, Dkt. #15-20, at 13 ("I wanted to file a grievance for their excessive use of force and for denying me medical attention, but they wouldn't give me any.  The officers protected themselves and their buddies.") (citing to one of the 86 sworn inmate declarations Dr. Schwartz reviewed in the preparation of his own sworn statement)).

e.      The failure to respond to detainee/inmate grievances regarding the excessive use of force, or to otherwise investigate these complaints (*see e.g.*, Declaration of Dr. Jeffrey Schwartz, *Hudson v. Preckwinkle, et al.*, 13-cv-8752, Dkt.# 15-20, at 9 ("On July 6, 2013 I was beaten by staff.  I filed a grievance and a report with the OPR.  No one ever met with me or

talked to me about these grievances or complaints.") (citing to one of eighty-four sworn inmate declarations Dr. Schwartz reviewed in the preparation of his own sworn statement)); and

      f.     A pattern of harassment, verbal threats, and physical abuse against corrections officers and guards who refuse to cover-up the use of excessive force at the Jail (*See e.g.*, allegations and testimony of former Jail corrections officers Roger Fairly and Richard Gackowski in *Fairley v. Andrews, et al.*, 07-cv-3343 and *Fields v. Velasco, et al.*, L009339 (alleged that they were forced to resign because they refused to cover up the severe beating of 5 shackled inmates by approximately 20 officers as well as other incidents of excessive force; alleged harassment included death threats, denied paternity leave by the Cook County Sheriff's Office, and getting stabbed by an inmate at the behest of fellow officer who was named in a use of force report)).

      46.     The above examples are supported by the 2008 DOJ CRIPA report regarding abusive conditions at the Jail. DOJ investigators found the following in relation to the code of silence at the Jail:

      a.     Attempts by corrections officers and other staff to conceal the inappropriate and excessive use of force. (DOJ CRIPA Report, at p. 22).

      b.     Attempts by senior division staff to dissuade inmates from complaining about the use of forcing, including through the use of threats. (*Id.*).

      c.     Failure to initiate many use-of-force investigations and any such investigations are "reactive and suffer from the appearance of bias." (*Id.* at p. 21).

      d.     Commanders admit that they do not review use of force reports." (*Id.* at p. 18).

e.     The Jail fails to elicit adequate information about the use of force incidents making proper management review impossible and/or ineffective. (*Id.*).

f.     The Jail uses investigative techniques that are "unlikely to result in complete or credible information. (*Id.* at p. 22).

g.     In most cases, internal affairs investigations of the use of force are only undertaken when a lawsuit is filed, rather than when a serious incident occurs. (*Id.* at p. 18).

45.     In this way, the Jail is deliberately set up in a manner that affirmatively discourages the investigation of corrections officers who engage in misconduct, or else, makes it more difficult to identify potential misconduct in the first place.  As such, in the BGA study cited above, which found at least 1094 complaints of excessive force by the Jail inmates and detainees against corrections officers and guards from 2008 through 2014, it was determined that in only 46 of these cases, a mere 4.2% of all complaints, did any officer involved face any form of discipline for their misconduct. *See e.g.*, https://chicago.suntimes.com/news/cook-county-jail-guard-beats-prisoner-on-ground-but-keeps-job.

47.     Upon information and belief, Jail officers and guards are first taught this code of silence at the Cook County training academy. *See e.g.* allegations that testimony of former Jail corrections officers Roger Fairly and Richard Glackowski in *Fairley v. Andews, et al.*, 07-cv-3343 and *Fields v. Velasco, et al.* L009339 (alleging that in separate training classes at the Cook County training academy they were taught to remain silent when asked about misconduct at the Jail by the "Jail outsiders" including members of the press and the legal community).

48.     This code of slice, including the failure to discipline, suspend, or terminate corrections officers engaged in excessive force, emboldens officers to commit even more violence and/or to act with impunity because they believe that their actions are condoned by their supervisors and/or that there will be few if any consequences for continuing to brutalize detainees and/or inmates.

### COUNT I (Against the Officers) – VIOLATION OF EIGHTH AMENDMENT

49.     Plaintiff restates and realleges Paragraphs 1 through 48 as if fully set forth herein.

50.     As described in the preceding Paragraphs, the intentional conduct of the Defendants, Bickom, Baluk, Miranda, and Vasquez (hereinafter, collectively, the "Officers") toward Plaintiff was objectively unreasonable and constituted excessive force and cruel and unusual in violation of the Eighth Amendment to the United States Constitution.

51.     As a direct and proximate result of the Officers' use of excessive force, Plaintiff suffered physical and emotional damages, which will be proven at trial, in addition to loss of personal property.

52.     One or more of the officers were aware of their fellow officers' misconduct and had a reasonable opportunity to intervene to prevent it, but failed to do so based upon the pervasive code of silence, which thrives at the Jail.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment against the Defendants, OFFICER BICKCOM; OFFICER BALUK; OFFICER MIRANDA; and OFFICER VASQUEZ, in an amount, in excess of $100,000.00, sufficient to compensate Plaintiff for the injuries and loss of property he has suffered, plus a substantial sum in punitive damages as well as costs, attorneys' fees and such other relief favorable to the Plaintiff that is deemed just and equitable.

**COUNT II (Against Cook County, Thomas Dart, Superintendent) - MONELL LIABILITY**

53.     Plaintiff Restates and realleges Paragraphs 1 through 52 as if fully set forth herein.

54.     This action is brought pursuant to 42 U.S.C. § 1983 and Illinois law to redress Defendants' Cook County's and Thomas Dart's tortious conduct and their deprivation of Plaintiff's rights secured by the U.S. Constitution.

55.     As described above in great detail, the Officers' actions and omissions were undertaken pursuant to the Jail's practices, policies, and customs, which include, but are not limited to the code of silence and which were the moving force behind the violations of the Plaintiff's rights.

56.     The Plaintiff was beaten in front of other officers, while they stood by, did nothing to intervene and/or stop the severe and unnecessary beating, and failed to document the entire process in violation of internal procedures.

57.     The Defendants,  COOK COUNTY, THOMAS DART, and Martinez, knew or should have know about the foregoing customs and practices, and code of silence, and yet they did nothing to stop such practices and customs, and, indeed, they facilitated them.

58.     As a result of such customs and practices, the Plaintiff was beaten and humiliated and suffered severe injuries to his person.

59.     Furthermore, as a result of such customs and practices, the Plaintiff was deprived of his personal property and effects.

60.     As described above in this Complaint, the defendants, COOK COUNTY and THOMAS DART, acting by and through their employees and agents (*i.e.* the Officers) did

unlawfully beat the Plaintiff until he became unconscious without lawful justification, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

61.     The misconduct was unreasonable and was undertaken intentionally, with malice, willfulness, and reckless indifference to Plaintiff's constitutional rights.

62.     The Plaintiff enjoyed protections provided him under the United States constitution against cruel and unusual punishment.

63.     At the time the Officers beat Plaintiff, they did so under the color of the law and with intent to deprive Plaintiff of his Eighth Amendment Rights.

64.     At the time Plaintiff was beaten and severely injured, he was restrained and did not pose a threat to the Officers.  Indeed the beating, hitting, and kicking of the Plaintiff occurred while he was subdued and handcuffed and the beating was completely unnecessary for any reason other than for the purpose of humiliating the plaintiff and inflicting great pain and injuries upon him.

65.     The beating of the Plaintiff described in this Complaint was caused by the policies, practices, and customs of the COOK COUNT, THOMAS DART, and MARTINEZ as well as the by the actions and policy-making officials for the County of Cook, as described in this Complaint.

66.     The actions of the Officers, acting under the color of state law and authority, and the County of Cook, as overseen and approved by Thomas Dart, constitute a violation of Title 42 of the U.S. § 1983, and were violations of the civil rights of the Plaintiff.

67.     At all times relevant to the causes of action set forth in this Complaint, and for a period of time prior and subsequent thereto, the County of Cook, and Thomas Dart failed to promulgate proper or adequate rules, regulations, policies, and procedures regarding: (a) proper

training of the officers at the Jail; (b) proper procedures to ensure that officers who violate prisoners' and detainees' constitutional rights are held accountable; (c) de-escalation of verbal altercations; and (e) overall training to ensure that the prisoners are treated like human beings in a humane and compassionate manner.

68.     In addition, THOMAS DART, COOK COUNTY, and MARTINEZ, failed to promulgate proper and adequate rules, regulations, policies, and procedures for the supervision of the Jail officers and guards.

69.     The foregoing failures to promulgate proper or adequate rules, regulations, policies, and procedures, and support of customs and practices such as the code of silence, described in great detail in this Lawsuit, caused routine violations of the Constitutional rights of the detainees and prisoners of the Jail, including, but not limited to, Lance Earls.

70.     The above-described widespread practices of violating constitutional rights of prisoners are so well-settled as to constitute *de facto* policy within the Jail and Cook County, which, at all relevant times, existed and currently exits and thrives because policymakers, such as THOMAS DART and Marinez, acting under the color of the law, with authority over the same, exhibited deliberate indifference to the institutional and wide-spread problems, thereby effectively ratifying them.

71.     The Plaintiff's injuries were caused by the employees and agents of Cook County, including, but not limited to the Officers, who beat the Plaintiff and who acted pursuant to one or more policies, practices, and customs set forth above in engaging in the misconduct described in this Complaint.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment against the Defendants, COUNTY OF COOK, THOMAS DART, and Superintendent Martinez, in an

amount, in excess of $100,000.00, sufficient to compensate Plaintiff for the injuries and loss of property he has suffered, plus a substantial sum in punitive damages as well as costs, attorneys' fees and such other relief favorable to the Plaintiff that is deemed just and equitable.

## COUNT III (Directed at the Officers) - BATTERY AND ASSAULT

72.     Plaintiff restates and realleges Paragraphs 1 through 71 of this Complaint as and for his Paragraph 76 of this Count IV, as if fully set forth herein.

73.     Count III is being brought by Plaintiff pursuant to Illinois common law against the Officers.

74.     Defendants, Officers, willfully and intentionally engaged in the punching, beating, and kicking the Plaintiff without justification or his consent.

75.      Further, COOK COUNTY, THOMAS DART, and Martinez, and  created the hostile work environment in which the Officers were allowed to engage in unlawful, discriminatory, and physical manner toward inmates, without any consequences.

76.     As a result of the Defendants' actions, Plaintiff suffered damages, which include humiliation, emotional distress, depression, extreme mental anguish, outrage, depression, damage to his reputation, and loss of the enjoyment of the ordinary pleasures in life.

WHEREFORE, Plaintiff, LANCE EARLS, respectfully requests that this Honorable Court provide the following equitable and legal remedies against the Defendants, OFFICER BICKCOM; OFFICER BALUK; OFFICER MIRANDA; and OFFICER VASQUEZ:

a.     Award Plaintiff a judgment against the Defendants in an amount to be determined at trial;

b.     Award Plaintiff pre-judgment interest;

c.     Award Plaintiff punitive damages; and

d. Grant such other and further relief as this Honorable Court deems just and proper.

### COUNT IV (Directed at the Officers) - COMMON LAW CONVERSION

77. Plaintiff restates and realleges paragraphs 1 through 76, as if fully set forth herein.

78. As alleged in more detail above, the Officers wrongfully and unlawfully seized and assumed control, dominion, or ownership over Plaintiff's personal property and effects (the "Property").

79. Officers deprived Plaintiff of his right in the Property.

80. Officers deprived Plaintiff of his immediate possession of the Property, absolutely and unconditionally.

81. Officers have failed and refused to return Plaintiff's property to him despite Plaintiff's demands to the proper authorities for return of his Property.

82. As a result, Plaintiff has been impoverished, has suffered tremendous grief and emotional distress, and has been humiliated and stripped of his dignity.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment against the Defendants, OFFICER BICKCOM; OFFICER BALUK; OFFICER MIRANDA; and OFFICER VASQUEZ, in an amount, in excess of $100,000.00, sufficient to compensate Plaintiff for the loss of property he has suffered, plus a substantial sum in punitive damages as well as costs, attorneys' fees and such other relief favorable to the Plaintiff that is deemed just and equitable.

### COUNT V (Directed at Cook County and Thomas Dart) - *RESPONDEAT SUPERIOR*

83. Plaintiff restates and realleges Paragraphs 1 through 82, as if fully set forth herein.

84. As more fully described above, the Officers willfully and wantonly and without legal justification, used physical force upon the Plaintiff.

85.     As a direct and proximate result of this intentional misconduct, Plaintiff suffered physical and emotional harm.

86.     Illinois law provides that public entities and employers, such as the Defendants, COOK COUNTY, THOMAS DART, and Martinez are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

87.     At all times relevant hereto, Defendants, OFFICERS, were agents, employees, and/or apparent agents of the Defendants, COOK COUNTY and THOMAS DART, and acting within the scope of their employment as the officers at the Jail.

88.     The Defendants, COOK COUNTY, THOMAS DART, and Martinez, are therefore liable as principals for all torts committed by the Defendants, Officers, in the environment created, ratified, and maintained by the Defendants, COOK COUNTY and THOMAS DART.

WHEREFORE, Plaintiff prays this Honorable Court enter judgment against the Defendants, COUNTY OF COOK, THOMAS DART, and Martinez, in an amount, in excess of $100,000.00, sufficient to compensate Plaintiff for the injuries and loss of property he has suffered, plus a substantial sum in punitive damages as well as costs, attorneys' fees and such other relief favorable to the Plaintiff that is deemed just and equitable.

Respectfully Submitted,

LANCE EARLS, *Plaintiff*

/s/ Boris G. Samovalov
One of his Attorneys

Boris G. Samovalov
ARDC: 6305036
221 N. LaSalle St., Suite 1320

Chicago, Illinois 60601
P: 312.245.0031
boris@zanesmith.com

## CERTIFICATE OF SERVICE

I, Boris G. Samovalov, on oath state that a true and correct copy of the above document was electronically filed with the Clerk of Court on August 22, 2018, using the CM/ECF system which will send notification of such filing(s) to all attorneys of record. Under penalties of perjury, I certify that the above statements set forth herein in this Certificate are true and correct.

/s/ Boris G. Samovalov
Boris G. Samovalov